244 S.W.2d 380 (1951)
HAPPY
v.
WALZ.
No. 21554.
Kansas City Court of Appeals, Missouri.
December 3, 1951.
*381 Lauf & Bond, Jefferson City, for appellant.
Hendren & Andrae, Jefferson City, for respondent.
DEW, Judge.
Respondent was the plaintiff in the trial court and brought this action to recover damages for personal injuries alleged to have been sustained in falling into an elevator shaft in the rear of defendant's hardware store in Jefferson City. The verdict and judgment were in plaintiff's favor in the sum of $7500. Defendant has appealed.
This is the second appeal in this case. See Happy v. Walz, 358 Mo. 56, 213 S.W.2d 410. The evidence in this and in the *382 former trial was substantially the same in essential particulars. Due to the nature of the points raised on the instant appeal, it will not be necessary to recite the facts in such detail as would otherwise be required. For a more detailed statement of the facts, reference may be had to the opinion of the Supreme Court, supra.
The plaintiff was 72 years of age and engaged in outdoor advertising. For many years he had been a customer of defendant's hardware store. On this occasion in question, so he testified, he called at defendant's hardware store to buy a ladder. Finding no place to park his car in front of the store, he drove into a private alley from a side street, which alley led up to and beyond the rear of the hardware store. He had seen other customers do this. He parked his car in the alley before quite reaching defendant's hardware store, alighted and walked to his right across the alley and into an open door at the rear of the store, which led into an elevator shaft, believing that it was the regular rear entrance door to the store, which was nearby and similar in appearance. He fell 10 or 12 feet to the bottom of the shaft and was seriously injured. He had on several occasions used the regular entrance door at the rear of the hardware store as an exit from that store in crossing the alley to enter a furniture store also owned and occupied by the defendant, but which faced on the side street. However, on such occasions he had never returned the same way but always left through the front entrance of the furniture store because he feared the darkness inside the rear entrance to the hardware store and a ramp inside leading to it. In other words, he had several times used the rear door to the hardware store as an exit to the alley but had never used it as an entrance to that store.
The negligence pleaded is the maintenance, under the circumstances, of a situation on defendant's premises which was dangerous to plaintiff and other invitees, without any mark or sign so designating it; with no locks, warnings, notice, guards, rails, or lights. The answer denied all allegations of negligence and pleaded contributory negligence. There is no contention in this appeal that plaintiff failed to make a submissible case of negligence, nor that the verdict was excessive.
Defendant's first point is that the court erred, over objection, in permitting two physicians, witnesses for plaintiff, to demonstrate to the jury, by moving plaintiff's limbs, to explain the nature and extent of plaintiff's injuries. It is claimed that the effect was inflammatory and prejudicial. Previously, and without objection, the plaintiff while on the stand, and at his counsel's request, exhibited to the jury his left knee, raised his right knee, moved both about, flexed them to show their limitation and irregularity, stood up on the witness stand and manipulated both legs, raised his heel and testified at great length regarding his injuries. Dr. McKnelly, who was called at the time and place of the accident and afterwards examined and treated plaintiff, testified fully as to the injuries. On the witness stand he was asked by plaintiff's counsel to examine plaintiff's knees and the movement of his legs. Defendant's sole objection was "to any demonstration in the presence of the jury." Objection was overruled. The witness then testified to some improvement in plaintiff's condition, explained the irregularities and impairment of motion, the causes thereof and the permanency of the injuries.
Dr. Stewart, who had examined plaintiff at the hospital and had seen the X-rays made of plaintiff's legs and ankles, testified for plaintiff and stated fully his findings. Plaintiff's counsel then asked him to look at plaintiff's left knee and right foot. Defendant's counsel objected to "any examination in the presence of the jury." Objection being overruled, the doctor then pointed out a knock-knee deformity in plaintiff's legs, certain differences in the contour of the ankles, the impairment of motion in the ankles and limitation of motion in the knees. Interspersed during this part of the doctor's testimony are requests by defendant's counsel, granted by the court, that the record show the witness had removed the plaintiff's shoes, pulled his trousers up over the knees, *383 manipulated his limbs within three feet of the jury, moved the plaintiff's feet and bent both of plaintiff's lower limbs at the knees.
A mere demonstration "of the nature and extent of plaintiff's injuries" is not in and of itself improper or prejudicial in a personal injury suit. The nature and extent of plaintiff's injuries are essential to his proof and necessary for the jury's determination. It is improper only when such demonstration exceeds the legitimate purposes and would unduly elicit sympathy and prejudice in plaintiff's favor to a degree that would tend to minimize other considerations required of the jury. If such examination in the presence of the jury would expose ghastly wounds, hideous deformities, or would elicit cries of pain by the plaintiff, or induce pitiful attempts at locomotion, or otherwise would dramatize plaintiff's injuries in a manner calculated to inflame the minds of the jury, then such demonstration becomes prejudicial and improper. No such elements are shown in the record before us in connection with the testimony of the physicians. Nor does defendant claim that the verdict was excessive on such account. Smith v. Thompson, 346 Mo. 502, 510, 142 S.W.2d 70, 73, 74. The question was largely a matter for the sound discretion of the trial court, which was in a better position to judge the effect of the examination. The court again reviewed the complaint in passing on the motion for new trial and we cannot hold that error was made in again overruling the point made. Browne v. Creek, 357 Mo. 576, 586, 209 S.W.2d 900.
Defendant's second contention is that the court erred in overruling his motion for a new trial on the ground of misconduct of the jury. The complaint is that the jury, in their deliberations, discussed the question whether defendant was insured and would not have to pay a judgment against him in the case. Previously, at the trial there had been filed in the case an agreement on the part of the plaintiff, The Weatherby Posting Service, his employer, and the Maryland Casualty Company, insurer for the employer, under which the said Casualty Company became subrogated to the extent of $4522.60 of any judgment recovered by the plaintiff in the case, because of payment of that amount to the plaintiff for Workmen's Compensation and for medical and hospital bills. This agreement was not introduced at the trial. The court denied the motion of defendant to make the Maryland Casualty Company a party plaintiff. Throughout the trial the court consistently ruled that plaintiff's right to recover in the case was unaffected by the subrogation rights of his employer's insurer. However, defendant's counsel, in cross-examination of plaintiff, said: "You didn't pay any hospital bills?" Objection to the question was made and sustained and, out of the presence of the jury an offer of proof was tendered and refused. Later defendant's counsel asked plaintiff: "Mr. Happy, you did not pay any doctors' bills?" Again the question was objected to and sustained, and an offer of proof made out of the presence of the jury, which was refused. Again, in cross-examining plaintiff's witness, Dr. McKnelly, defendant's counsel asked him: "Now, doctor, Mr. Happy didn't pay you, but somebody else didMr. Andrae: Now, if the Court please, we object to that. Mr. Laufpay your bill?" Objection was again sustained and the jury instructed to disregard the statement. Offer of proof again made in the absence of the jury was refused and upon the return of the jury the court instructed the jury to disregard the question. Defendant's counsel in his final argument to the jury, said in part: "* * * and in that connection I wish to say to you that should you bring in a verdict in favor of the plaintiff, and I do not think you will, that no one other than Milo Walz would pay it. No other person, firm, corporation or anyone would pay that judgment other than Milo Walz, he being the defendant in this case, and it would all come out of his pocket personally,no one else's."
To support this point, as assigned in his motion for a new trial, defendant filed with that motion an affidavit of the deputy sheriff to the effect that he overheard members of the jury, while in their deliberations, discussing the question of insurance and that one said: "What difference does it make? *384 He will not have to pay it. He (Walz) has insurance, or he should have." Defendant's counsel also filed affidavits that they did not represent any insurance company in the case. Defendant's own affidavit was filed, wherein he described a conversation with the foreman of the jury after the verdict, who said, "you are insured." Defendant also stated in his affidavit that at the time of the accident he carried no insurance covering the maintenance of the elevator in his store; that no insurance company is interested directly or indirectly in the defense, and if the judgment stands he will have to pay it personally without contribution from any insurance company. Affidavits of several of the jurors, including three who did not sign the verdict, were filed by the defendant, wherein they all stated that the subject of insurance was discussed, and some stated that it was their opinion that the verdict would not have been rendered except for their belief that defendant had insurance to cover the judgment.
The plaintiff promptly filed his motion to strike the affidavits as not proper evidence in the case, and, as an attempt to impeach the verdict. The court thereupon sustained the motion to strike the affidavits of the jurors who had signed the verdict, and otherwise overruled the motion. Plaintiff was granted leave to file, instanter, affidavits of jurors in support of the verdict.
Accordingly, plaintiff filed affidavits of the foreman and six other members of the jury, including one who had not signed the verdict. The purport of them was that only after many votes had been taken generally on the responsibility for the accident, and each resulting heavily in plaintiff's favor, and after discussing at length a verdict for either $7500 or $3500 in his favor, was the subject of insurance mentioned and then only speculations as to the same, and that it was mentioned only because they recalled that defendant's counsel had inquired of the witnesses whether plaintiff had personally paid his medical bills, or if they had been paid by someone else. They denied that the subject influenced their determination of the responsibility for the accident. The motion for new trial was then overruled.
The general rule in this state has recently been reaffirmed, to the effect that "a juror may not, by his own affidavit or testimony, impeach the jury's verdict because of misconduct of a juror," if objection to such attempt is timely made. Cook v. Kansas City, 358 Mo. 296, 302, 214 S.W.2d 430. In the instant case prompt and sufficient objection was made and preserved. But it is argued that since plaintiff's counter-affidavits also show the same misconduct complained of, that plaintiff has waived the incompetency of the jurors. While we question the premise on which that conclusion is based, we cannot consider any impeaching statements of the jurors who signed the verdict. Cook v. Kansas City, supra. As to the affidavit of the deputy sheriff and of the jurors who did not sign the verdict and filed by defendant, they are in conflict with the counter-affidavits respecting the time, extent, nature and effect of the jury's consideration of the insurance question and the matter became one for the trial court's discretion in passing on the motion for a new trial and the testimony in connection therewith. It cannot be said that the court abused its discretion in overruling that ground of the motion for a new trial, under the circumstances shown.
Defendant next asserts that the court erred in giving plaintiff's Instruction P-3, which placed the burden on defendant to prove plaintiff's contributory negligence, if defendant's negligence be found "as detailed in other instructions", and added: "And in this connection you are further instructed that unless you find that said elevator doors and shaft were so obviously dangerous, unsafe and so located that an ordinary prudent person under like or similar circumstances to plaintiff, in the exercise of ordinary care, would not have attempted to enter them without first ascertaining their true condition, then plaintiff was not guilty of contributory negligence and you cannot find for defendant on that ground."
It is claimed that this instruction confines the issue of contributory negligence to the question of obvious danger; that it is an abstract statement of law; that it ignores plaintiff's familiarity with the rear door to defendant's store; that it confuses the issue of contributory negligence *385 with other issues. We do not believe that the issues are confused by this instruction; nor does it present a mere abstract proposition of law, since, by its words, it is made to apply to the facts of this case. The plaintiff's familiarity with the rear door, or his lack of it, was covered by this and other instructions requiring plaintiff's exercise of the care of ordinarily prudent persons under like circumstances. Assuming that plaintiff had knowledge of the existence of the elevator door, or of its dissimilarity to the regular rear entrance door, such facts alone would not constitute contributory negligence as a matter of law. Geninazza v. R. U. Leonori Auction & Storage Co., Mo.Sup., 252 S.W. 417. Plaintiff, in that case an invitee in defendant's store, was told by defendant's salesman to follow him and he proceeded down a dark stairway. The plaintiff saw him descending the stairway, slowly followed him, but because of the darkness could not see where the steps began and fell down the stairway. The court said, 252 S.W. at page 419: "If, when she reached the platform, the danger of falling was visible and obvious, her failure to discover and avoid it would amount to contributory negligence. Where, however, the danger is not so obvious that a person should have seen it in the exercise of ordinary care, failure to discover it is not negligence." See, also Oakley v. Richards, 275 Mo. 266, 204 S.W. 505. So, in the present case, even though plaintiff was familiar with the regular rear entrance to defendant's store and, in the exercise of ordinary care could or should have noted the dissimilarity between that and the door to the elevator shaft, yet, he would not be guilty of contributory negligence in stepping into the elevator shaft door, which was dark and "gloomy", unless it was so obviously dangerous to do so that no person using such care would have done so. This is the issue submitted in Instruction P-3. It was not error to give such an instruction in view of the other instructions given.
Finally defendant assigns as error the refusal of his Instruction D-10. That instruction submitted plaintiff's familiarity with the rear door of defendant's store, its dissimilarity as compared to the door to the elevator shaft and the negligence of the plaintiff in entering the elevator door if one approaching it in the ordinary manner and using ordinary care would not have been misled into so entering it. Defendant asserts that this instruction was a converse of plaintiff's submission of the case and one to which he was entitled. The court had given defendant's Instruction D-8 in the nature of a converse of plaintiff's Instruction P-3 on contributory negligence. D-8 submitted to the jury plaintiff's failure to look where he was going, his ability to see, in the exercise of ordinary care, that to step into the shaft was dangerous; his failure to use ordinary care and thereby was negligent and that such negligence contributed to his fall. Instruction D-10 was, in effect, another instruction on contributory negligence, particularizing the same elements as were contained in Instruction D-8, and its refusal was not error, in view of the other instructions given. We find no error materially affecting the merits of the case. We affirm the judgment.
All concur.