Michael D. KICKHAM, Plaintiff-Appellant,

v.

Kenneth CARTER, Defendant-Respondent,

Royal Papers, Inc., a Corporation, Defendant-Respondent,

Royal Crown Bottling Corporation of St. Louis, a Corporation, Defendant-Appellant.

No. 46538.

Supreme Court of Missouri,

Division No. 1.

July 14, 1958.

James W. Jeans, Hullverson, Richardson, Hullverson & Jeans, St. Louis, for plaintiff-appellant Michael Kickham.

William H. Tombrink, Strubinger, Tudor, Tombrink & Wion, St. Louis, for defendant-respondent Kenneth Carter.

Heneghan, Roberts & Cole and George E. Heneghan, St. Louis, for defendant-respondent Royal Papers, Inc.

Hocker, Goodwin & MacGreevy, John M. Goodwin, St. Louis, for defendant-appellant, Royal Crown Bottling Corp. of St. Louis.

VAN OSDOL, Commissioner.

Plaintiff, Michael D. Kickham, instituted this action for personal injuries against defendants, Kenneth Carter, Royal Papers, Inc., (hereinafter sometimes referred to as "Royal Papers"), and Royal Crown Bottling Corporation of St. Louis (hereinafter sometimes referred to as "Royal Crown"). The case arose out of a collision between the motor vehicles driven by plaintiff and defendant Carter at the intersection of Ninth and Destrehan Streets in St. Louis.

Plaintiff had charged defendant Royal Crown with negligence in parking its truck in a crosswalk in violation of city ordinance, but the trial court sustained Royal Crown's motion for a directed verdict at the conclusion of plaintiff's case. Plaintiff's case was submitted as against defendants Carter and Royal Papers in plaintiff's principal verdict-directing instructions Nos. 1 and 2, it being plaintiff's submitted factual theories that defendant Carter was negligent under the humanitarian rule in failing to stop his vehicle; that defendant Carter in operating the vehicle was the servant of defendant Royal Papers; and that Royal Papers was liable for Carter's negligence. The jury returned a verdict for plaintiff and against defendants Carter and Royal Papers awarding $25,000 damages.

The trial court sustained plaintiff's motion for a new trial as to defendant Royal Crown, and sustained the separate motions for a new trial filed by defendants Carter and Royal Papers. Plaintiff and defend-

ant Royal Crown have appealed from the new-trial orders.

Herein, in treating with the conflicting contentions of the parties, plaintiff and the several defendants, upon the questions relating to the propriety of the trial court's orders, it initially is necessary to state the evidence introduced tending to support the conflicting factual versions of the manner in which the collision was brought about.

Ninth, a north-south street, is 36.2 feet wide. A double line is painted white near the center of the pavement; the line is 17.8 feet west of the east curb. Destrehan, an east-west street, is 24 feet wide. Parking on the north side of Destrehan is prohibited. A stop sign confronting westbound traffic on Destrehan is 15.6 feet east of the east curb line of Ninth. A building, the first floor of which is occupied by a confectionery store, is at the southeast corner of the intersection. The north wall of the building is 7.8 feet from the south curb of Destrehan, and the west wall is 12.7 feet from the east curb of Ninth. When the collision occurred, a "Royal Crown soda truck" was parked headed north along and parallel with the east curb of Ninth at or near the southeast corner of the intersection. There was evidence that the truck was parked across or extended into the "crosswalk," that is, into the westward projection of the interval between the north (property) line of the building and south curb line of Destrehan. The Royal Crown truck was approximately seven feet high, seven feet wide and twenty feet long.

Plaintiff introduced evidence tending to show that at about ten-thirty in the "nice" morning of March 16, 1956, he, driving his 1947 Dodge, had moved northwardly on Ninth at a speed of twenty-five miles per hour. Plaintiff was moving over the general route he usually followed in going to his place of employment. When plaintiff approached Destrehan his view of westbound traffic east of Ninth became obstructed by the parked Royal Crown truck. Cars were also parked south of the truck along the east curb of Ninth. Plaintiff's Dodge

was moving a foot or two east of the center line of Ninth. When plaintiff was about twenty feet south of the intersection, defendant Carter, who had been moving westwardly on Destrehan in his 1952 Packard, was "starting to come out * * * from behind" the Royal Crown truck. That "is the first time I (plaintiff) saw him." The Packard was three or four (or five) feet south of the north curb of Destrehan. The Packard was "edging out" from being the truck. It was seven or eight feet, or "whatever the width of that truck is," west of the east curb of Ninth. Plaintiff's foot was on the service brake, but he didn't slow down. It would have taken "around 50 feet" for plaintiff to stop his Dodge, and if he had braked "we surely would have had a worse accident."

Plaintiff said his "first reaction was to honk my horn and to swerve to my left and to get out of his way but I swung over to my left side and he just kept coming and I thought I was by them at the time and well, I got surprised when he hit me because I thought I was past him." Upon impact the front of plaintiff's car was even with or north of the north curb line of Destrehan. Plaintiff had swung over to the left four or five feet and the impact occurred three to five feet (east) of the center line of Ninth. The left side of the Dodge was two or three feet over in the southbound lane of Ninth. The "upright" or "guard" of the front bumper of the Carter automobile came into contact with the right rear fender of plaintiff's Dodge. The fender was practically torn off; and the right rear wheel was hit and the hubcap knocked off. Plaintiff was "wrenched around," and sustained injury to his back.

Defendant Carter testified that he had been moving west on Destrehan in his Packard and had come to a stop at the stop sign east of Ninth. His view to the southward was obstructed by the Royal Crown truck, and he "started creeping up to get to a position where I could see south." He was moving "one to two" miles per hour. When the front of his Packard was six to

eight feet into the intersection, he heard a horn and stopped. Defendant Carter was able to and did stop "almost instantly because I had my left foot on the brake." When he came to a stop the front of the Packard was "possibly a foot west of" the left side of the parked Royal Crown truck. Then, looking to the left, defendant Carter saw plaintiff's Dodge moving about midway between the center of Ninth and the parked Royal Crown truck. "It was about twenty feet from me." Plaintiff's Dodge was moving forty to forty-five miles per hour. Before the impact, defendant Carter had seen plaintiff's car swerve three or four feet to its left. When the impact occurred, plaintiff's car was headed northwest. According to defendant Carter, plaintiff's car had skidded, and its right rear fender had struck the right upright or guard of the bumper of Carter's Packard.

In attending the contentions pertaining to the orders sustaining the motions for a new trial filed by defendants Carter and Royal Papers, we shall first examine the contention of these defendants (respondents) that no evidence was adduced warranting the giving of plaintiff's Instruction No. 1 submitting humanitarian negligence of defendant Carter in failing to stop his motor vehicle after plaintiff was in imminent peril. In treating with this contention we shall examine the evidence from the standpoint most favorable to plaintiff.

■ There was substantial evidence that plaintiff saw defendant Carter's Packard when plaintiff was twenty feet south of Destrehan. Plaintiff testified that at that time the Packard was six or seven or eight feet out into the intersection. Plaintiff sounded a warning and swerved to his left. Defendant said he heard the warning and, stopped his Packard almost instantly with its front six or eight feet out into the intersection. He then saw the Dodge moving "about twenty feet from me." Plaintiff testified the Packard was moving about five miles per hour, and defendant said the Packard had been "creeping" at about "one to two" miles per hour. Both of these

statements seem to have been merely estimates, or variable approximations; likwise were the estimates of the distance the Packard had moved into Ninth when plaintiff first saw it and when defendant Carter heard the warning "honk" of the Dodge. But, regardless of the rate of speed the Packard was moving and regardless of its position with reference to the east curb of Ninth at the time defendant Carter first heard the warning and saw the approaching Dodge, there was evidentiary basis for the reasonable inference that defendant Carter was moving the Packard at such a rate of speed that, when and after he heard and saw the approaching Dodge, he could have stopped the Packard short of the point of the impact of the collision. A jury may believe all of the testimony of any witness or none of it or may accept it in part and reject it in part, just as the jury finds it to be true or false when considered in relation to the other testimony and the facts and circumstances in a case. Gould v. Chicago, B. & Q. R. Co., 315 Mo. 713, 290 S.W. 135, and cases therein cited; Smith v. Kansas City Public Service Co., 328 Mo. 979, 43 S.W.2d 548; McCall v. Thompson, 348 Mo. 795, 155 S.W.2d 161; Burr v. Singh, 362 Mo. 692, 243 S.W.2d 295; Anderson v. Bell, Mo.Sup., 303 S.W.2d 93.

As we have said, defendant Carter testified he heard plaintiff's warning when Carter's Packard had reached a point six to eight feet into the intersection. Defendant Carter further testified that he stopped almost instantly with the front of the Packard possibly a foot east of the Royal Crown truck, or about six to eight (or nine) feet into the intersection. The evidence supports the inference that when plaintiff was moving in his approach to the intersection and saw the Carter vehicle he could not stop short of its pathway. As stated, defendant Carter's testimony was that he heard plaintiff's warning and stopped the Packard almost instantly. This testimony tends to show defendant Carter's appreciation of the danger potential in the approach of the vehicle northbound on

Ninth, and he saw plaintiff's car almost immediately thereafter.

The jury was privileged to disbelieve and ignore defendant Carter's testimony that he stopped the Packard and to believe plaintiff's testimony that the Packard moved on and came into collision with plaintiff's vehicle. Now, although the jury had the privilege of ignoring defendant Carter's testimony that he stopped the Packard, the jury also had the privilege of accepting and giving decisive effect to the testimony of defendant Carter that he *could and did stop* the Packard almost instantly; which testimony, we believe, reasonably supports the inference that defendant Carter was moving at such a rate of speed that he could have stopped his vehicle (after he heard and saw plaintiff's approach) well within the distance to the point of collision three to **five** feet east of the center of Ninth.

█ We hold that plaintiff made out a submissible case of humanitarian negligence of defendant Carter in failing to stop his motor vehicle.

Among other grounds specified for granting a new trial to defendant Royal Papers, the trial court specified that the verdict of the jury on the issue of the responsibility of Royal Papers for the negligent conduct of defendant Carter was against the weight of the evidence. Plaintiff-appellant does not question the sustension of Royal Papers' motion for a new trial on this specified discretionary ground. But defendant-respondent Royal Papers contends and assumes the burden of showing that the trial court should have sustained Royal Papers' motion for a directed verdict. It is argued that plaintiff "did not make a submissible case on the issue of whether defendant-respondent Carter was acting as the servant of defendant-respondent Royal Papers," and that the trial court erred in giving plaintiff's Instruction No. 2 submitting the issue to the jury.

In defendant Royal Papers' separate motion for a directed verdict at the close of plaintiff's evidence it was stated as a ground of the motion "that no credible evidence was introduced to the effect that on the occasion in question defendant Kenneth Carter was acting as the agent or servant of this defendant." Other grounds stated in the motion were, in effect, that the doctrine of respondeat superior was not applicable to the shown relationship between Royal Papers and defendant Carter. Again at the close of all the evidence defendant Royal Papers restated the same grounds; and again in Royal Papers' after-trial alternative motion the same grounds were stated. In the alternative motion for a new trial defendant Royal Papers also assigned the ground "(17)", as follows, " * * *  the court erred in submitting to the jury the issue of liability of this defendant for the negligence, if any, of the defendant Kenneth Carter when the evidence showed that as a matter of law Kenneth Carter was not acting as the servant of this defendant and that this defendant had neither control nor right of control over Carter's automobile." In sustaining defendant Royal Papers' motion for a new trial on other specified grounds, the trial court in effect overruled the ground assigned in paragraph "(17)." Bailey v. Interstate Airmotive, 358 Mo. 1121, 219 S.W.2d 333. We shall examine the instant contention which basically affects Royal Papers' liability; and which contention was presented to the trial court as stated, supra, and was by the trial court in effect ruled adversely to defendant Royal Papers. Bailey v. Interstate Airmotive, supra.

█ Our examination of the evidence relevant to the issue of defendant Royal Papers' responsibility under the doctrine of respondeat superior discloses that plaintiff relied on the testimony of defendant Carter, whom plaintiff called to the witness stand and examined under the rules of cross-examination, and which witness (defendant Carter) was subsequently cross-examined by counsel for defendants.

Having examined this evidence, we have the tentative opinion that plaintiff's evidence was insufficient to support the submission of the instant issue. Even so, we have seen that the evidence on this issue was not fully developed. The transcript on appeal discloses sources of evidence, relevant to the issue, are available to plaintiff, and we cannot say that no recovery may be had against Royal Papers if all available evidence were presented on this issue. It is the settled practice of appellate procedure that a case should not be reversed, for failure of proof, without remanding, unless the record indicates that the available essential evidence has been fully presented and that no recovery could be had in any event. Byrne v. Prudential Ins. Co. of America, Mo.Sup., 88 S.W.2d 344, and cases therein cited; Lance v. Van Winkle, 358 Mo. 143, 213 S.W.2d 401. We believe that in the interest of justice the order granting a new trial as to defendant Royal Papers should not be reversed and final judgment entered for that defendant and against plaintiff, but that plaintiff's case as against Royal Papers should be, in effect, remanded for a new trial. From a practical standpoint this result has already obtained in this case by the trial court's award of a new trial to Royal Papers on the discretionary ground mentioned supra; and it is our opinion that the trial court's order granting defendants Carter and Royal Papers a new trial is justified on the ground which the trial court specified for the sustention of the motions for a new trial of those defendants which we shall now consider.

Plaintiff's witness, Dr. Smolik, a neurological surgeon, testified that a myelogram of plaintiff's spine disclosed a blocking of the interspace between the third and fourth lumbar vertebrae and that he had advised a laminectomy. The doctor in performing the operation excised the laminae; opened the dura encasing the nerves; separated the bundle of nerves which at this point is known as the cauda equina; and removed a "knuckle of stuff," the ruptured cartilage of intervertebral disc which had caused the bundle of nerves to "kink." On the witness stand, the doctor was detailing the technique of the operation, describing minutely the place and length of the incision and the amount of bone excised, and continued in relating the subsequent steps toward removing the offending membrane as stated supra, and in so doing was using a model or chart of the spine and pictures of the actual operation.

The doctor had suggested that his assistant had taken these pictures of the operation, which pictures the doctor had available; and plaintiff's counsel said he believed the pictures would be of help in illustrating "the nerves, structure, and type of matter that was removed." Counsel for defendants were objecting to the pictures on the ground that they were inflammatory and "a highly prejudicial thing." The objections were overruled. Four of the pictures exposed four stages of the technical progress of the operation which the doctor described, and two were of the "knuckle of stuff"—the membrane of the ruptured disc which the doctor had removed. The pictures, which were marked as exhibits, were not introduced into evidence; however, as stated, the doctor in his extensive explanation and recounting of the details of the operation referred to the pictures, or some of them, by exhibit numbers and showed them to the jury in connection with his explanation of the technique of the operation. Subsequently, defendants' counsel unsuccessfully moved for a mistrial on the ground that the pictures and the doctor's "rather graphic and theatrical description of this thing" were "a highly prejudicial and very passionate inciting demonstration."

The trial court in sustaining the respective separate motions for a new trial filed by defendants Carter and Royal Papers specified the grounds (among others) that the court had erred in permitting the doctor, in the presence of the jury, "and with pictures taken of the operation which he exhibited to the jury, to demonstrate to the jury how he performed the operation, *said*

*pictures and said doctor's testimony being highly inflammatory and prejudicial and causing the jury to become biased and sympathetic in favor of plaintiff and prejudiced against this defendant,"* and that the court had erred "in admitting over the objection * * * of this defendant demonstrative evidence (and photographs) by Dr. Smolik of how he had performed the operation * * *." (Our italics.)

■■ It has been said that a mere demonstration "of the nature and extent of plaintiff's injuries" is not in and of itself improper or prejudicial in a personal injury action. The nature and extent of plaintiff's injuries are essential to his proof and necessary for the jury's determination. It is improper only when such demonstration exceeds legitimate purposes and would unduly elicit sympathy and prejudice in plaintiff's favor to a degree that would tend to minimize other considerations required of the jury. Demonstrations which dramatize plaintiff's injuries in a manner calculated to inflame the minds of the jury are prejudicial and improper. Happy v. Walz, Mo.App., 244 S.W.2d 380. See, now, Taylor v. Kansas City Southern Ry. Co., 364 Mo. 693, 266 S.W.2d 732, in which plaintiff's counsel required defendant's witness, a doctor, to demonstrate a neurological examination with plaintiff as the subject and later asked the witness to demonstrate to the jury how an operation to excise the "nucleus pulposus" was performed and, in compliance, the doctor demonstrated where the incision would be made, its length and depth, et cetera. In the Taylor case, as here, there was no controverted fact issue regarding the performance of a laminectomy and there was no sufficient reason for dramatizing the operation before the jury.

■ While the demonstration, photographs and testimony of Dr. Smolik were in connection with plaintiff's injury and bore upon the amount of the award of damages therefor, the bias and sympathy for plaintiff and the prejudice against defendants affected the verdict's incipient

validity inasmuch as the jurors may have been actuated by their bias and prejudice in making up the verdict on the issue of liability. On this specific ground alone, the trial court was justified in awarding a new trial to defendants Carter and Royal Papers on all issues of plaintiff's claim against them. Jones v. Pennsylvania R. Co., 353 Mo. 163, 182 S.W.2d 157; Brown v. Moore, Mo.Sup., 248 S.W.2d 553; Taylor v. St. Louis Public Service Co., Mo.Sup., 303 S.W.2d 608. See, also, Stokes v. Wabash R. Co., 355 Mo. 602, 197 S.W.2d 304.

It is unnecessary to examine the questions of whether plaintiff's Instruction No. 1 was erroneous in omitting hypotheses of facts essential to the submission of humanitarian negligence, and of whether plaintiff's Instruction No. 2 was erroneous because of being predicated on an affirmative finding under the assertedly erroneous Instruction No. 1. These contentions may be considered by counsel and errors in instructing the jury, if any be apparent, may be avoided upon retrial.

We now attend the trial court's order granting plaintiff a new trial as to defendant Royal Crown.

■ Defendant-appellant Royal Crown does not here contend that no submissible case was made out on the issue of (primary) negligence of Royal Crown in parking its vehicle in a crosswalk in violation of ordinance. See Domitz v. Springfield Bottlers, 359 Mo. 412, 221 S.W.2d 831; Kuba v. Nagel, Mo.App., 124 S.W.2d 597. But Royal Crown contends plaintiff, as a matter of law, was contributorily negligent. In determining this question, we bear in mind that plaintiff's negligence is a jury question, unless it may be said from all the evidence and the reasonable inferences therefrom, viewed in the light most favorable to plaintiff, the only reasonable conclusion is that plaintiff was negligent and that his negligence was a proximate cause of his injury. Creech v. Riss & Co., Mo.Sup., 285 S.W.2d 554.

In support of the instant contention Royal Crown cites Adkins v. Boss, Mo.Sup., 290 S.W.2d 139 (in which plaintiff Adkins knew of the potential danger at the intersection and carelessly, almost deliberately, drove into and through the intersection); James v. Berry, Mo.App., 301 S.W.2d 530 (plaintiff's brother failed to see what was plainly visible); Douglas v. Whitledge, Mo.App., 302 S.W.2d 294 (plaintiff looked negligently and did not look again until defendant's car was within two feet of him); and Major v. Davenport, Mo.App., 306 S.W.2d 626 (plaintiff could have seen defendant's car when plaintiff was 40–50 feet from the intersection). These cases, as noted, are distinguishable from the case at bar wherein there is no evidence that plaintiff, in looking, saw or could have seen the Packard before it had crept out into the intersection.

█ In the case at bar, there was no evidence establishing the position of plaintiff's car at the time plaintiff, in looking, saw or could and should have seen and realized he could not observe westbound traffic on Destrehan because of the circumstance that the Royal Crown truck was parked near the southeast corner of the intersection. Plaintiff was familiar with the intersection and it could be reasonably inferred he was conversant with the fact that a stop sign confronted westbound traffic on Destrehan. Plaintiff had approached the intersection at a speed of twenty-five miles an hour with his foot on the brake and, when he was twenty feet south of the intersection, saw defendant's car edging or creeping out from behind the parked truck. There was evidence that when he saw defendant's car, plaintiff could not stop short of the pathway of it. Plaintiff, however, immediately sounded a warning and swerved to the left. In the circumstances of this case, we do not wish to say that plaintiff, as a matter of law, was contributorily negligent in failing to apply the brakes and reduce the speed of his vehicle at a time prior to the approach and disclosed movement of defendant Carter's

Packard into the intersection. Plaintiff, being on a street whereon traffic was protected from a right-hand or westbound approach on Destrehan by the stop sign on Destrehan, could be reasonably said to have had a right to assume that westbound travelers on Destrehan, having observed the stop sign and the circumstance of the parked Royal Crown truck, would not proceed out beyond the parked truck into the intersection and into the immediate pathway of northbound traffic on Ninth. We think the question of contributory negligence was for the jury.

We hold the trial court did not err in sustaining plaintiff's motion for a new trial as to defendant Royal Crown.

The trial court's new-trial orders should be affirmed. It is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All of the Judges concur.