**Ray FRAVEL, Plaintiff-Respondent,**

v.

**BURLINGTON NORTHERN RAILROAD,**
**Defendant-Appellant.**

**No. 47024.**

Missouri Court of Appeals,
Eastern District,
Division Two.

April 24, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 1, 1984.

Application to Transfer Denied
July 17, 1984.

---

Daniel Buescher, St. Louis, for defendant-appellant.

C. Marshall Friedman, Newton G. McCoy, Friedman, Weitzman, & Friedman, P.C., St. Louis, for plaintiff-respondent.

CRIST, Presiding Judge.

Plaintiff worked as a laborer for defendant railroad. On March 22, 1979, railroad assigned him to dismantle a damaged box-

car. During the course of the dismantling process, plaintiff sustained severe and permanent injuries when he was crushed by a one-half ton steel end plate.

Plaintiff brought an action under the Federal Employers Liability Act, 45 U.S.C. § 51 *et seq.*, alleging railroad's negligence by reason of the res ipsa loquitur doctrine. An extensive trial followed, concluded by a jury verdict in favor of plaintiff for $1,276,-000. Judgment was entered accordingly. Railroad appeals. We affirm.

Railroad raises five points. Point four concerns the giving of an instruction patterned on MAI 24.01. Point five relates to the use of an instruction based on MAI 8.02. Both instructions are required; both have recently been approved. See *Bair v. St. Louis-San Francisco Ry. Co.*, 647 S.W.2d 507, 510–11 (Mo. banc), *cert. denied sub nom. Burlington Northern, Inc. v. Bair,* — U.S. —, 104 S.Ct. 107, 78 L.Ed.2d 109 (1983); *Dunn v. St. Louis-San Francisco Ry. Co.*, 621 S.W.2d 245, 255–56 (Mo. banc 1981), *cert. denied,* 454 U.S. 1145, 102 S.Ct. 1007, 71 L.Ed.2d 298 (1982). No further comment need be made concerning these instructions.

Plaintiff suffered multiple abrasions, contusions, and fractured bones from being crushed and pinned beneath the end plate. In addition his right shoulder was dislocated and his left thigh was punctured. The break in plaintiff's left leg was a comminuted fracture, a fracture resulting in more than two pieces of bone.

Plaintiff's left leg was initially placed in traction. Two days after the injury an orthopedic surgeon decided to operate. A traction pin, which is a stainless steel threaded wire, was placed on the left tibia just below the knee. The left femur was broken in three large, jagged fragments which caused considerable bleeding into the muscles of the thigh.

Following the operation plaintiff again was placed in traction and remained so until May 16, when the traction pin was surgically removed and a cast applied. Healing was slow, however, because little bone formation between the breaks oc-

curred. After the second operation plaintiff remained in the hospital twelve more days for intense physical therapy. When plaintiff was discharged on May 28, he was placed on exercise programs but could place no weight on the left leg. X-rays taken then showed small amounts of new bone formation but also indicated a bowing of the left leg.

Follow-up visits to the orthopedic surgeon revealed continued bowing of the left leg, indicating the fracture sites had not properly solidified. Twice daily physical therapy was begun on July 16 and continued until August 1.

During the next few months plaintiff visited his doctor several times. On October 25, the doctor discovered a one-half inch shortening of plaintiff's left leg. The doctor advised plaintiff to undergo a "quadriceps plasty" on the left thigh. In this operation to increase the knee joint motion, the muscles are stripped from the bone. During the operation the surgeons found plaintiff's kneecap had become fused to the femur. This condition was also corrected.

Immediately after the operation plaintiff's knee joint enjoyed 90° of flexion. A little over a week after discharge, however, plaintiff's knee lost 40° of flexion. X-rays revealed the kneecap was again becoming fused with the femur. The doctor recommended removal of the kneecap. Thus, plaintiff underwent a fourth operation.

After the kneecap was removed on December 18, plaintiff began experiencing pain in the knee and difficulty sleeping. Over the next few months the pain gradually subsided and plaintiff's ambulation increased. His left leg, though, remained shorter than his right leg.

By June 17, 1980, plaintiff was complaining of occasional pain about the back of his right shoulder. Spinal x-rays evidenced a deterioration of the disc space between the fifth and sixth vertebrae. Plaintiff's condition remained relatively unchanged until he was able to return to work on December 3, 1980.

342

In December of 1980 plaintiff was examined by a second orthopedic surgeon. This surgeon testified at trial as to the pain plaintiff experienced in his neck, right side, and shoulder. This pain combined to weaken plaintiff's ability to grip things with his right hand. Due to the shortened left leg, plaintiff's pelvic area became tilted to one side resulting in a rotational type limping gait. The surgeon opined that if the disc space in plaintiff's spine continued to deteriorate, surgery would be required to relieve the extreme pain it would cause. The surgeon also noted arthritic changes about the left side of the hip and felt a hip replacement would probably be needed. The doctor also thought a total knee replacement operation would be called for in the future.

Railroad's first complaint concerns the exhibition of plaintiff's injuries to the jury. After the second orthopedic surgeon had testified for nearly two hours, referring to x-rays taken of plaintiff and various anatomical charts and models, plaintiff's counsel proposed to display plaintiff to the jury wearing shorts and a T-shirt. During a conference at the bench, railroad objected to any demonstration of plaintiff, claiming it would inflame the jury and prove nothing, the injuries having been adequately testified to by the witnesses. The trial court overruled the objection upon learning plaintiff's intention was to display his left leg, including the deformed kneecap area, his tilted hip, the attending scars, and restricted movement in the leg.

The jury was allowed to view plaintiff walk in the courtroom as the doctor pointed out his injuries. Then the doctor had plaintiff lie down before the jury. The transcript indicates the following:

A. [Surgeon] There is not much what I want to show here. There is just two things. It doesn't give me much room. Come on down a little farther. Are you comfortable? Okay. Lining his hip up as he should, putting the kneecaps up, you can see where the foot goes that way. The motion of the knee—let me have it, Ray. He should just straighten it all the way. He should hyper-extend which he does straighten it out. He doesn't—he's got a little flexion in bending it. That's it. I'm sorry to hurt you, Ray. That's as far as that knee will go. It is fixed at that point. Okay, Ray, let me just have it again for a second. Bend your knee gently. I'll be as easy as I can about the rotation of the hip. We were talking about external rotation. That's it. It won't go internally. He'll go, but it hurts. That's very painful as opposed to this, okay? There is a significant difference. Okay, Ray, I think that's all I need.

Plaintiff's counsel then asked the doctor to specifically point out the scars from plaintiff's surgery, the area of the missing kneecap, and the tilt of the hip. Railroad lodged no objections during the demonstration and shortly afterward proceeded to cross-examine the doctor.

During an in-chambers conference at the close of plaintiff's case, railroad requested the opportunity to make a record. Its attorney moved for a mistrial based on the fact the evidence presented by the demonstration of plaintiff's injuries was merely repetitive and therefore served only as an appeal to the passions and prejudice of the jury. The request for a mistrial was denied.

At the outset it is important to note the objection made by railroad and the reason assigned for it. Specifically, railroad objected to *any* demonstration of plaintiff's injuries on the grounds a display of the injuries would be cumulative to and repetitive of the testimony of the witness doctors.

"A mere demonstration 'of the nature and extent of plaintiff's injuries' is not in and of itself improper or prejudicial in a personal injury suit. The nature and extent of plaintiff's injuries are essential to his proof and necessary for the jury's determination." *Happy v. Walz*, 244 S.W.2d 380, 383 (Mo.App.1951).

The admission of demonstrative evidence is a matter entrusted to the sound

discretion of the trial court. The exhibition of a plaintiff's injury is highly relevant; since the defendant is charged with having caused the injury, the jury should be able to see, in a dignified manner, what the defendant has done to the plaintiff. Certain exhibitions, however, are deemed improper when designed merely to arouse antipathy against the defendant, sympathy for the plaintiff, or where they are irrelevant as to any fact issue in dispute. *Taylor v. Kansas City Southern Ry. Co.*, 266 S.W.2d 732, 736 (Mo.1954).

■ The first two instances of improper demonstration of a plaintiff's injury concern the manner in which the exhibition takes place. Eliciting cries of pain, inducing pitiful attempts at locomotion, or removing an ocular prosthesis before the jury to display it are condemned because they seek to dramatize the plaintiff's injuries in a manner calculated to inflame the jury. *Happy v. Walz, supra; Anderson v. Burlington Northern R.R. Co.*, 651 S.W.2d 176 (Mo.App.1983). Demonstrative evidence excluded because of its lack of probative value on a disputed fact issue often involves unduly detailing the surgical procedures associated with a plaintiff's injury. See *Taylor v. Kansas City Southern Ry. Co., supra; Kickam v. Carter*, 314 S.W.2d 902 (Mo.1958).

■ When the offered demonstrative evidence bears some relevancy to the issues tried, the trial court's decision to admit it is arrived at by balancing potential for inflaming the jury against the aid of the evidence in resolving the disputed issue. We find no error in the present case by the trial court allowing plaintiff to show the jury his injured leg and restricted mobility. They are part of the actual damage he sustained by reason of railroad's negligence. It would have been error not to have permitted such an exhibition.

■ Most of railroad's point on appeal, however, does not concern whether or not the fact of plaintiff's injuries should have been displayed, but the manner in which the exhibition took place. From the portion

of the transcript set out above, railroad asks us to infer plaintiff cried out and grimaced when the doctor manipulated his leg and hip. First, we are not willing to make such an inference based on the record before us. Had counsel wished to raise on appeal non-verbal actions occurring at trial, the proper method is to make a record with an offer of proof. Second, even if a record had been made of plaintiff crying out in pain or grimacing, railroad presented no objection concerning such acts to the trial court. If railroad did not find the manner in which plaintiff's injuries were demonstrated objectionable at trial, it can not assert an objection on appeal.

Next railroad claims reversible error in plaintiff's counsel suggesting during closing argument the railroad might fire plaintiff in the future. Railroad's counsel, in his closing argument, stated plaintiff would be working with the railroad until his retirement. Thus, plaintiff's counsel was merely countering railroad's argument by saying plaintiff had no guarantee of continued work at the railroad. Plaintiff's counsel also suggested plaintiff might not be able to continue work due to his physical condition.

■ The trial court enjoys broad discretion in controlling closing argument. *Lewis v. Bucyrus-Erie, Inc.*, 622 S.W.2d 920, 925–26 (Mo. banc 1981). Having opened the door by suggesting plaintiff would be working for it until his retirement, railroad is now in no position to complain. See *Doyle v. St. Louis-San Francisco Ry. Co.*, 571 S.W.2d 717, 725 (Mo.App.1978).

■ Finally, railroad argues the verdict of $1,276,000 was excessive, induced by the passions, biases, and prejudices of the jury. The first portion of its attack relates the alleged excessive verdict to the trial errors ruled against railroad above. Since the excessiveness of the verdict, standing alone, is insufficient to show bias or prejudice necessitating a new trial, we rule against railroad on this portion of its argument. *Koehler v. Burlington Northern,*

**344**

*Inc.*, 573 S.W.2d 938, 944–45 (Mo.App. 1978).

The second portion of railroad's point urges error in the failure of the trial court to order a remittitur under the "rule of reasonable uniformity." *Johnson v. Missouri-Kansas-Texas R.R. Co.*, 374 S.W.2d 1, 6 (Mo.1963).

 Remittitur prevents awards exceeding fair or reasonable compensation. Since no two cases are identical, each must be decided on its own facts. *Koehler, supra.* All reasonable presumptions are indulged in favor of the jury's verdict, with the evidence viewed in a light favorable to it and inconsistent evidence disregarded. *Woodford v. Illinois Central Gulf R.R. Co.*, 518 S.W.2d 712, 718 (Mo.App.1974).

Factors which help determine the appropriateness of the award include plaintiff's age, the nature and extent of his injuries, his losses, diminished earning capacity, inflation, the permanency and degree of disability, the amount of pain and suffering, plaintiff's education, and awards in similar cases. *Koehler, supra.* If substantial evidence supports the verdict, it must be affirmed. *Morris v. Israel Bros., Inc.*, 510 S.W.2d 437 (Mo.1974).

Plaintiff was 49 at the time of his injury. His injuries, described above, were extensive. Plaintiff suffers from a permanent disability to his leg and a permanent limp. The prognosis is he will have to undergo several operations in the future as well as the four he has had so far. The injuries have caused a great deal of pain and will continue to cause plaintiff pain. Plaintiff's future ability to work is questionable and the wages lost while recuperating total $30,000.

We first note the trial court was not of the opinion the verdict was excessive. To obtain relief in this court, railroad has the burden of showing the verdict is glaringly unwarranted so as to shock this court's conscience. *Koehler, supra* at 946; *Dunn, supra* at 255–56. In viewing all the evidence with deference to

the jury's verdict, we cannot say the verdict is outrageously excessive.

Judgment affirmed.

PUDLOWSKI and SIMON, JJ., concur.