**Bryan ELKINS, et al., Plaintiffs,**

v.

**Kevin KASSING, Defendant.**

**No. 82–2133C(3).**

United States District Court,
E.D. Missouri.

Nov. 28, 1984.

Richard Shaikewitz, Alton, Ill., for plaintiffs.

Samuel T. Vandover, James E. Godfrey, Sam P. Rynearson, Stephen D. Hoyne, St. Louis, Mo., Frank Anzalone, Clayton, Mo., for defendant.

## MEMORANDUM

HUNGATE, District Judge.

This matter is before the Court for a decision on the merits of the claims of plaintiffs Bryan Elkins and Godelieve Steenbergen against defendant Kevin Kassing for personal injuries alleged to have occurred as a result of an automobile accident. Issues of liability and damages are disputed by defendant.

The Court held a nonjury trial on October 30, 1984, allowing the parties a full opportunity to present evidence, at the conclusion of which the Court announced a finding of liability in favor of plaintiffs and against defendant. Having considered the pleadings, trial testimony, exhibits, stipulations, and memoranda of the parties, the Court hereby makes and enters the following findings of fact and conclusions of law.

*Findings of Fact*

1. Plaintiff Elkins is a resident of Alton, Illinois; and plaintiff Steenbergen is a resident of the Netherlands.

2. Defendant Kassing is a resident of Webster County, Missouri.

3. On June 24, 1982, at approximately 9:45 p.m., Bryan Elkins and Godelieve Steenbergen were returning to Alton, Illinois, after spending the earlier part of the evening in St. Louis County, Missouri.

4. Elkins was driving and Steenbergen was a passenger in the front seat as their automobile proceeded in a northerly direction along a two-lane stretch of U.S. Route 67 approximately one-half mile north of Lindbergh Boulevard in St. Louis County, Missouri. At the same time, Kevin Kassing was driving an automobile with two passengers in a southerly direction along the same portion of Route 67.

5. Kassing was driving behind a pickup truck which was driven by Wayne Daggett and his family. Kassing repeatedly pulled up to within a few feet of the rear of the Daggett vehicle, dropped back, and pulled up close again. At times, Kassing's automobile was so close to the Daggett vehicle that the Daggetts could not see Kassing's headlights.

6. Kassing had been drinking beer and a mixture of gin and lemonade throughout the evening and manifested the symptoms of intoxication. Immediately prior to the accident, Kassing was driving erratically and at excessive speeds, and the passengers in his car had admonished him to be more careful.

7. Kassing then pulled close to the Daggett vehicle once again, and without signaling or looking for signs of oncoming traffic, turned into the oncoming lane of traffic to pass the Daggetts. When Kassing turned into the oncoming northerly lane, the automobile being driven by Elkins was one or one-half a car length in front of the Kassing vehicle, and both were travelling at speeds in excess of forty miles per hour. The automobiles collided head-on, severely

injuring the plaintiffs and killing one of the passengers riding with Kassing.

8. As a result of the collision, Elkins suffered a penetrating wound in his right knee that entered into the knee cavity itself. He also suffered a laceration of his right wrist and his forehead. The cut on his face required plastic surgery and he suffered a mild concussion.

9. The bottom of Elkins' foot was severely lacerated, exposing fractures of the second, third, fourth, and fifth metatarsal heads. He suffered a fracture of the cuboid and cunneiform, the outer tarsal area of the foot or midfoot. He also suffered a fracture of his right hip acteabulum which is where the head of the hip fits. He further suffered a fracture of the right proximal fibula between the knee and the ankle.

10. Elkins underwent several operations, including one to drill stainless steel rods or wires into his foot to hold the fractured metatarsals in place. The second metatarsal was shattered into many pieces.

11. Elkins presently has a clicking in his knee that may require an arthogram. He continues to have pain in his ankle that will require further tests and treatment. Surgery may be required to insert elastic joints in his foot, particularly the shattered second metatarsal. In addition, further treatment of the now irregular joints in his foot will require doctors visits, x-rays, special shoes, and costs for other tests.

12. Elkins suffered a great deal of pain from his injuries and throughout the period of recovery from the accident. He continues to suffer pain daily in his ankle and foot. He is only twenty-one years old and has a permanent partial disability of his foot and he will continue to suffer pain for the rest of his life. Before the accident, he was active in school events such as plays, and he was a talented dancer. He is now, however, subdued and unable to participate in dancing and other such activities as before.

13. Elkins was hospitalized for approximately three weeks as a result of the inju-

ries he sustained in the accident, at a cost of $10,109.00. He incurred additional medical expenses and doctors' bills of $4,115.00. He was also working two jobs at the time and as a result of the accident, lost wages of $2,333.00.

14. As a result of the collision, Steenbergen suffered lacerations to all areas of her face, and deep lacerations to her right knee and right thigh. Plastic surgery was performed both in this country and in the Netherlands to reduce the amount of scarring; however, she retains permanent scarring. Many of her teeth were also broken off and extensive dental work, including the capping of many teeth, was done while she was hospitalized.

15. Steenbergen suffered a dislocation of the right hip ball from its socket, and the hip socket itself was shattered into many pieces. It was necessary for the doctors to operate and attempt to reassemble her hip like a "jigsaw puzzle." Numerous screws were used to hold the pieces of her hip socket together. Nevertheless, the repaired joint resembles a round ball in a square socket, according to her doctor.

16. Steenbergen also suffered severe injuries to her left knee. The lower end of her left thigh bone was shattered and exposed. It was necessary for her doctors to operate and release the tendon from below her kneecap to the upper leg bone. As her knee healed, adhesions developed within the joint. To permit movement again, she was hospitalized, anaesthetized, and the knee was manipulated to break the binding effect of the adhesions.

17. Throughout Steenbergen's stay in Christian Northeast hospital from June 25, 1982, to September 16, 1982, she was kept in traction by means of pins in her lower extremities. She developed a urinary tract infection and breathing problems; her internal organs stopped functioning, requiring the use of a gastric nasal suction for a great deal of her stay; and her wounds were left open to facilitate healing from the inside out. For the entire stay, she could not turn over, move, or change positions. She was in great pain and discomfort throughout this hospitalization.

18. Steenbergen's medical treatment continued when she returned to the Netherlands. Her condition was such that, after being released from Christian Northeast Hospital, she had to be transported by stretcher and in the company of the head orthopedic nurse of the hospital to a hospital in the Netherlands. She was then hospitalized for over sixty days for additional surgery and rehabilitation.

19. Once out of the hospital in the Netherlands, Steenbergen could not perform her job as a waitress, or work at Christmas and during the summer as she had previously. She had to remain out of school for a year. Her family has no automobile and she has always relied upon bicycling and walking for transportation. In addition, she was athletic and liked to run, swim, and dance. Now walking and cycling cause her pain and she can only do either for short periods. She had to rely on taxi service on a daily basis while recuperating from her injuries at home in the Netherlands.

20. Steenbergen is now twenty-one years old, and the effects of her injuries will last for the rest of her life. She has taken pain medication daily since the accident and she will suffer pain for the rest of her life. The type of employment she will be able to enter into will be permanently restricted in that she will not be able to enter into work that will require standing, stooping, or kneeling.

21. Steenbergen's right hip and left knee will become arthritic. She will require hip and knee replacement surgery in the future. In addition, because she is only twenty-one years old, it is unlikely that any replacement surgery will last for her lifetime, which means additional surgery will be necessary, including the possibility of hip and/or knee fusion which would make the joints solid and immobile.

22. Steenbergen's hospital, doctor, and other medical bills while in Christian Northeast Hospital total $40,965.70. She was subsequently hospitalized in the Netherlands for sixty-six days and underwent ex-

**662**

tensive outpatient treatment for her injuries. Defendant, however, objects to the introduction of Dutch hospital and medical bills plaintiffs sought to put into evidence through Steenbergen's mother only.

### Conclusions of Law

1. The Court has jurisdiction over this cause pursuant to 28 U.S.C. § 1332.

■ 2. The Court finds that defendant Kassing was operating his automobile while under the influence of intoxicating liquors and in a careless manner. Kassing failed to exercise due care when he turned his automobile into the oncoming lane of traffic to pass the Daggett vehicle. Kassing's negligence caused the resulting collision with the automobile driven by Elkins which caused plaintiffs severe, painful, and permanent injuries.

■ 3. The Court finds that Elkins did not have sufficient opportunity to react in such a manner that he could have avoided the collision. Accordingly, the defendant is liable for the whole amount of the damages suffered by the plaintiffs as a result of his negligence.

■ 4. The Court finds that Elkins suffered $16,557.00 in damages for hospital and medical expenses and lost wages.

■ 5. Defendant's objection to the introduction of the Dutch hospital and medical records proffered by Steenbergen's mother will be sustained, as plaintiffs did not present the records' custodian or another qualified witness. Fed.R.Evid. 803(6); 28 U.S.C. § 1732. Accordingly, those expenses will not be considered, and the Court finds that Steenbergen suffered a total of $40,965.70 in damages for hospital and medical expenses.

■ 6. There is no exact measure or table in Missouri for determining damages for pain and suffering. *See Graeff v. Baptist Temple of Springfield,* 576 S.W.2d 291 (Mo.1978). The Court has carefully considered in the case of each plaintiff the nature, extent, and severity of their injuries; their pain and suffering; diminished earning capacity; awards in similar cases; inflation and economic conditions; and the permanency of their injuries and disabilities combined with future pain and suffering, along with the youth of both plaintiffs. *Id.* at 309; *Fravel v. Burlington Northern R.R.,* 671 S.W.2d 339 (Mo.App.1984).

Accordingly, judgment will be entered for plaintiff Elkins in the amount of $85,000; and for plaintiff Steenbergen in the amount of $1,000,000.